We will hear argument next in number 18-2224, Valencell against Fitbit. Good morning, may it please the court. Sorry, my name is Dan Oleko. I represent the appellant Valencell in this appeal. Valencell raises three primary issues on appeal, the first two of which have to do with denials of due process and the Administrative Procedures Act. The third issue has to do with the board's erroneous denial of Valencell's conditional motion to amend, which I'll say for last. With respect to the first issue, the board deprived Valencell of its due process rights and violated the APA by relying on new arguments from Fitbit's reply that were not made in the petition. Valencell recognized these new arguments in the alternative to file a motion to strike those new arguments. The board denied that request and suggested that Valencell should address those arguments during the oral hearing. Well, Valencell did that, but ironically the board actually struck Valencell's arguments that were made in rebuttal to Fitbit's new arguments and instead relied on Fitbit's arguments in its In its petition, Fitbit argued that figures 2C of Goodman disclosed the claim light guiding interface under Fitbit's own construction. After Valencell responded, proposed a new construction for light guiding interface, Fitbit switched horses. Instead of relying on figure 2C, it relied on figure 7A to provide the light guiding interface under Valencell's construction. And the board ended up adopting that argument. It specifically adopted the argument at Appendix 17, and it's clear that the board relied on that new argument as part of its analysis. It found because the light source doesn't extend through the aperture, there's a space between the emitting surface and the end of an aperture, end of the aperture, at Appendix 20. The only figure in Goodman that shows a space between the emitter and the end of the aperture is figure 7A. Figure 2C, the emitter fills the entire aperture. Second, the board relied on ASADA, new arguments that Fitbit made in its reply regarding the ASADA reference. In its petition, Fitbit relied on... I'm sorry, can I just ask, how do we know just from 2C that the emitter is 24, the emitter 24, and I guess 24 is the emitter, right, that it fills the aperture? Well, when you... the figure 2C is a expanded version of the device. When you collapse that down, it appears to me that there is any space with respect to figure 2C's emitter in the end of the aperture. And the board, there's no testimony that there would be. The only evidence that Fitbit relied on to show that space was figure 7A and not figure 2C. With respect to ASADA, Fitbit failed to provide any reason that you combine the it relied on to disclose or to support its arguments regarding claims 6 and 7. After Valencell noted that deficiency in its response, Fitbit came back with a new expert declaration and a new argument saying that, oh, well, a person of ordinary skill in the art would combine those different embodiments. Valencell never had an opportunity to respond to that new evidence in that new Valencell of its opportunity to respond. Third, the board relied on a new argument that Fitbit made regarding layer 3 of figure 11 in ASADA. Fitbit argued initially in its petition that layer 3 of ASADA was the claimed light transmissive material, but failed to provide any real evidence supporting that claim. It argued only that because the figure showed that the layer 3 was clear that it must be light transmissive without relying on any disclosure from ASADA to support that claim or any other expert testimony regarding ASADA's layer 3. In its reply, Fitbit added to its obviousness case and argued that layer 3 must be light transmissive material because it needs to protect the skin or protect the optical components of the device from the skin and relied on new expert testimony and that new argument. The board relied on that new argument in finding the claims unpatentable. And that was a proper, in light of the board's denial of Fitbit's request, to strike those new arguments and to follow its reply. The second issue on appeal. In Newvasive, this court held that a person of the board's findings must be supported by sufficient reasoning and it must explain why a person of ordinary skill in the art will combine two different references and must explain why a primary reference would benefit from the features of a secondary reference. Here, the board failed to do that with respect to certain combinations. With respect to the combination of Goodman and ASADA, the board found that Goodman would benefit from ASADA's reduction of motion artifacts and benefit from ASADA's wireless features. However, Goodman itself doesn't need the reduction of motion artifacts. Goodman is a device used in intensive care unit with patients that are suffering from deep disabilitating problems. But the sensor of Goodman conforms to the skin such that it becomes part of the skin. The sensor has very low mass and has cutaneous conformance. The primary electronics of the sensor are actually separated from the sensor itself on the skin, such that Goodman states it eliminates motion artifacts. Those features eliminate motion artifacts in Goodman. ASADA, on the other hand, is a wearable device that tracks heart rate, but it has relatively high mass and does not have cutaneous conformance. The board never explains why a person of ordinary skill in the art would add mass to Goodman's sensor, decrease cutaneous conformance, and increase motion artifacts to achieve any purported benefit. Further, the board never explains why a person of ordinary skill in the art would want to make Goodman's device wireless when Goodman's device is intended to be used on an example, if I had just suffered a heart attack, why would I want to use a wireless sensor that's battery-operated instead of a sensor that's plugged into the wall and is very reliable? The board never explained that. Instead, the board just found that the benefits, whatever they are, outweigh the detriments of the combination, but failed to support that finding with any reasoning. Second, with found that the lens of HICS would be beneficial to ASADA and Goodman to direct or focus light. However, as HICS acknowledges itself, the only time you need a lens is if the substrate doesn't properly direct or focus light. Neither ASADA nor Goodman discussed an issue with needing to direct or focus light more in transmissive PPGs. ASADA mentions with respect to reflective PPGs the need to direct or focus light, but that's because those types of PPGs suffer short circuits. Transmissive PPGs do not suffer those same short circuits. By failing to fully articulate the benefits that the primary references would achieve from the combinations, the board failed to conduct an adequate obviousness analysis. With respect to the last issue, the denial of valence cells conditional motion to amend, the board again conducted insufficient obviousness analysis with respect to the combination of GUPTA and ASADA. ASADA teaches that you would not use a MEMS accelerometer in the device. GUPTA is a MEMS accelerometer. The board discarded that teaching away evidence based on Keller, which stands for the proposition that the standard for obviousness is not one of bodily incorporation. Well, that's true, but the standard for obviousness is not one of bodily incorporation. That doesn't mean you can just As this court held in Polaris, evidence of a teach-away is always relevant, even if it doesn't amount to a teach-away. The board must consider that evidence as part of its overall analysis of a motivation to combine. Second, with respect to the board's findings of lack of written description, the board ignored the essence of the underlying specification. As this court held in the Layland Stanford case, it's the essence of the specification that controls, not whether the claims map one-to-one with the exact words of the specification. And here, the board ignored that essence. The claim covers a signal processor configured to remove motion artifacts using a bandpass sensor to remove a band of frequencies and produce a conditioned signal. The specification describes a first block that represents a conditioning stage that utilizes a bandpass filter to remove frequency bands outside of a range of interest, and a second block that accepts that signal, preconditioned signal, from the first block to remove motion artifacts. It also discloses that both of those blocks can be encoded in a microprocessor. That is, in essence, the claim at issue, Substitute Claim 12. Finally, with respect to indefiniteness, the board found that several claims were indefinite for lack of antecedent basis. However, this just ignores how a person of ordinary skill in the art would read the claims. For example, Substitute Claim 12 recites motion-related physiological information. There's not multiple motion-related physiological information disclosed in the claim. There's only one, and that information is extracted... Can you tell me where the claims are and where the alleged lack of antecedent basis issues are? The Substitute Claim is at Appendix 4613. So the issue I was just discussing about the bandpass filter reduction of motion artifacts, that's on 4613. And then the claim... So the issue in this claim with respect to the antecedent basis is the extraction of physiological motion-related information, and then later a reference to a string comprising motion-related and physiological information. The claim is clearly referring back to the initial motion-related physiological information that's extracted by the processor from the two motion sensors there. I mean, there's really no other way to read it, and there's no evidence that a person of ordinary skill in the art would read it any other way. I guess this surprised me a little bit, because I initially thought this was not indefinite, because it's perfectly clear that there is no restriction on the nature of the multiplexed output serial data string comprising motion-related and physiological information, because it doesn't say said, but then your position is that, in fact, it's perfectly clear that there is an I'm sorry, an implicit restriction on what? About what this information is. Isn't that what the board said? The board said this is indefinite, because we can't tell from the claim language whether the string comprising motion-related and physiological information, whether the information in that string is the same information as was referred to above. And I would have thought from the language, of course it doesn't have to be the same information as above. It doesn't say it information, but your position is, no, that's quite wrong. Well, my position is that those are the same. It's clearly the same piece of information. There's no disclosure of separate information in the specification, and although it does maybe flip wording there from motion-related physiological information to physiological and motion-related information, there's no other physiological emotion-related information that's referred to in the claim as being extracted. I think it's the same. With respect to claim, substitute claim 17, the board found that the first through fourth optical emitters lacked antecedent basis. However, it's clearly present in the dependent claim. Substitute claim 17, this is at appendix 4615, depends from claim 16. Claim 16 has, just above there, wherein at least one optical emitter comprises first, second, third, and fourth optical emitters. Antecedent basis right there. And finally, with respect to substitute claim 22, which is actually at the back on page 4637, the signal processor referred to here is clearly the same signal processor that's referred to in the dependent claim 12, or the claim claim 12, from which this ultimately depends. Where's the signal processor? I'm sorry, I lost track. Sorry. Which claim is it? Claim 22, and that's on 4637. Okay, got it. Claim 17 depends from claim 16, not claim 15? Well, so I believe there's a typographical error at the back of this brief. I'm just looking at 4636. Right, and I would direct you to 4615. And it says, the monitoring device of claim 16, wherein the first and second optical emitters So it's depending from claim 16 here. I believe it's a typographical error. I'm sorry to interrupt you, but how do you know which one the board looked at? Well, I think the board maybe incorrectly looked at the one with the typographical error. I mean, it's clear to me when you're looking at this that claim 17 was meant to depend from claim 16, because that's where the optical emitters have an antecedent basis. Which is this chart? I mean, this chart's within the briefing itself, whereas the other one is a claim listing. Right? And so one would think that if they're looking just at the claims, they're probably going to look at that claim listing. I mean, I don't think the valence cell was bound by the claim listing when there was this detailed explanation of the changes in the brief itself. I mean, both the listing and this explanation on 4615 or the recitation of 4615 are both part of the brief. I mean, one's not separately submitted from the other. Was there discussion before the board of this typographical disparity? I don't believe there was due to briefing limitations and at the oral hearing just timing limitations. But I submit that it's very clear based on... It had to be 16. It had to be 16. Because 16 says first, second, third, fourth, and 17 refers to first, second, and third, and fourth. Absolutely. That's our position, Your Honor. And so I see I'm out of time. If you have any questions, please let me know. Otherwise... Not just now. Thank you. We'll restore the rebuttal. Thank you. May it please the court. Let's start with the notice issues. Valencell is incorrect. Valencell was given the opportunity to address every one of Fitbit's rebuttals at the IPR hearing. With respect to figure 7A, which the board did not rely upon, there's no reference to figure 7A of Goodman in the final written decision anywhere. Mr. Bragg alone, Valencell's counsel, argued at the IPR hearing that Goodman's figure 7A does not support Fitbit's invalidity position. The board disagreed. Valencell's counsel also addressed figure 11. I'm sorry. If the board didn't mention it, how did the board disagree? The board disagreed implicitly by not referring to it and adopting Fitbit's view of figure 2C and that Goodman invalidates the claims. Is that your primary position? That the board just didn't rely on it because they didn't mention it? Or do you also argue that the board could have relied on it because it's just rebuttal evidence? It could have relied upon it because it was proper rebuttal as well. It's not referenced in the final written decision, but the board could have relied upon it. Ultimately, what we do know is in their response, Valencell provided a manipulated figure of 2C that left off the top two layers. That was something that Fitbit couldn't predict would happen. In explaining why Valencell's manipulated figure was incorrect, Fitbit referred to the reason why Valencell's arguments and detections were incorrect. What's the connection between their providing what you call a manipulated figure and their argument that your petition in relying on 2C was insufficient because it provided no evidence that 24 does not fill the aperture? But it did. The petition did reference 2C and the petition did explain the reasons why those limitations were met. Where does the petition explain that 24 doesn't fill the aperture? I don't believe it specifically says... And if it doesn't fill the aperture, doesn't that mean there's no guide? No, because there is a guide because ultimately Goodman discloses direct in light. So there is a guide and that's exactly what's shown in figure 2C and a person of ordinary skill in the art would understand it that way. At the end of the day, what we do know is that the board relied on figure 2C and column 9, lines 39 to 40 of Goodman to reject Valencell's arguments. And it doesn't refer to figure 7A, but again, that's not the only reason. With respect to, you know, under the Inumetsu case, this was proper rebuttal explanation as to why Valencell's arguments were incorrect. And the specification does discuss allowing light to be directed along a path, right? And so when we look at the, again, when we look at what happened with respect to figure 7A, they had the opportunity to address it at the hearing, they did address it at the hearing, and at the end the board relies on figure 2C and the specification of Goodman to invalidate the claims under Goodman. When we turn to ASADA, again, you know, the issues fall into two groups. Whether ASADA discloses windows with light transmissive material, and whether ASADA's prototype B includes components of prototype A. And in response to Fitbit's identification of the transmissive material in ASADA in the original petition, Valencell presented an argument that the dotted lines in ASADA's images were holes in the layer. And in reply, Fitbit then reiterated its arguments in the petition that ASADA's layer 3 was the required light transmissive material. And it rebutted the speculation that the dotted lines were apertures. Layer 3 in ASADA is transmissive. When you look at the figure 11, the layers 2 and 6 are opaque, but layer 3 is left clear to show that it's light transmissive. ASADA consistently uses solid lines in the figures to show features that exist, like the apertures in layer 2. And in ASADA, the dashed lines are just assembly instructions. And ultimately, Valencell's counsel ultimately agreed at the IPR hearing that the lines in ASADA are just assembly instructions on how those layers are put together. Again, similarly, under Itamitsu, Fitbit's arguments regarding the dashed lines is a permissible rebuttal argument. With respect to prototype B, again, Fitbit presented its theory. Do I understand right, Valencell's argument on these matters is only a notice argument. It's not an argument that there is a lack of substantial evidence for the conclusions, for the findings that the board made about these teachings. That's correct. And again, this court can affirm based either on Goodman or ASADA. And here, with respect to prototype B, it presented its theory, Fitbit did, in its original petition, that prototype B builds on prototype A. It explained that ASADA describes, quote, iterations of the pioneering MIT ring. And then Fitbit walked through these iterations and presented prototype B as, quote, a redesign of the same sensor band that includes a CPU. And then Fitbit's experts similarly confirmed that prototype B was just a later iteration of the earlier prototypes. And as I said, Fitbit, Valencell had notice of Fitbit's positions, and ultimately addressed this prototype B and A issue at the IPR hearing. Again, Fitbit, at all times, pointed to the same disclosure in ASADA for the signal processor and the transmitter limitations that are disclosed in Claims 6 and 7. Let me turn to the motivation to combine, because the board conducted a detailed analysis of the motivation to combine the prior art. The board found that Goodman, ASADA, and Hicks all relate to the same fields of art, and they're generally directed to the same uses. The board agreed with Fitbit's analysis that all three are directed to non-invasive optical biosensors. All three references describe transmissive-type PPGs. Hicks and Goodman both placed sensors on the finger. The board further found that ASADA and Goodman described uses by patients in a hospital setting. All of these sensors are geared towards detecting health information and being able to read through motion. Motion is a constant issue, and there are a lot of patents, and I've stood before this court on other occasions, dealing with motion artifact and pulse oximeters. And even in an ICU setting, in a hospital setting, with pediatric patients in the ICU, small, sick kids that are wiggling around, and even adults and others, even in a hospital setting, there's motion that has to be dealt with, and each of these patents talks about that. And so the board also described the concrete benefits for combining the references and the reasons why a person with ordinary skill in the art would look to these references for any missing elements. The board also found that Goodman and ASADA would benefit from, quote, increased lens characteristics that were used in Hicks. And the board found one of ordinary skill would be motivated to modify Goodman to take advantage of the additional motion artifact reduction in ASADA. So where we are is a situation where, as in Novartis, the board was not required to address every piece of evidence cited by Vail and Sell in support of its detriment arguments. We have two opinions on these two appeals that are quite lengthy, and each of them addresses the motivation to combine and actually addresses quite a number of the detriment arguments that were raised by Vail and Sell. So under allied erecting and Novartis, that's more than enough to affirm the board's findings. Let me talk about the amended claims briefly. There are three separate grounds that the board found the amended claims to be invalid on, obviousness, written description, and indefiniteness. To prevail on appeal, Vail and Sell has to show all three bases were incorrect, and it cannot do so here. If we look at obviousness, Vail and Sell's counsel argued that ASADA teaches away from adding Gupta's MEMS accelerator. The board rejected Vail and Sell's arguments, specifically because the claims don't require a MEMS accelerometer. So Vail and Sell's teaching away argument is irrelevant under, again, the Itamitsu case. The board ultimately agreed that Vail and Sell's teaching away argument did not apply either. Finally, the board didn't rely on adding Gupta's MEMS accelerator to ASADA, so again, the teaching away argument is not relevant. Instead, what the board did was the board's combination implements Gupta's multiplexing that used hardware that was already found in ASADA. If we look at the written description issues, again, the board's factual determination on that is entitled to deference under the In re Owens case. And amended independent claim 12 requires reducing motion artifacts that use at least one bandpass filter. But the bandpass filter described in the specification of column 25, lines 44 to 45, doesn't reduce motion artifact. That's performed by a different filter, an adaptive filter that is separate, and it's described at column 25, lines 48 to 51. Therefore, amended independent claim also requires reducing motion artifacts that use at least one bandpass filter, and that doesn't match up with what's described in the specification. So if we look at the indefiniteness issues, again, extracting physiological motion-related information in claim 12, and then at the bottom it then refers to a data string comprising. And I think counsel for Valenzuela identified the real issue here. These claims, as we all know, are written for a person of ordinary skill in the art. And I heard him say that, of course it's the same. It's the only way to read it. What about the other claim where the claim seems to refer back to 16, which then discusses the first, second, third, and fourth emitters? That doesn't seem to be a problem. Why is that a problem? I believe that there is also a vague antecedent basis with respect to those claims as well. Why? Because I don't think that they identify what the first, second, third, fourth emitters are. Do you agree that that claim depends on 16, not 15? Can I have one moment? I think I have the answer, but I want to be correct. It depends which page of the appendix you look at, doesn't it? Yes. Yes. Okay. Did the board recognize that or not recognize that? I'm not 100% sure. I know you're like four layers down or three layers or something, but still. For sure. It's not clear to me the board recognized. I really don't understand, and I understand we're several layers down, so you don't have to answer this, but I don't understand why the language wherein the first and second optical emitters emit infrared light and the third and fourth optical emitters emit visible light doesn't have an antecedent basis. When that claim refers back to a claim that says we're in the at least one optical emitter comprises first, second, third, and fourth optical emitters. I don't see the argument at all. If you want to respond to that and tell me why it's indefinite, I'm happy to hear you. Let me just say, there are arguments that I've articulated that I think are more forceful arguments as to why this board's opinion should be affirmed. If we look at that particular issue, there are arguments that I think with respect to what was done with the dependency and claim 15, but I'm going to take your offer not to answer it. I'm going to sit down unless you have any other questions. Okay. Thank you for your argument. Three minutes. Thank you. May it please the court. I just want to address a few issues here. Council noted that we had the opportunity to respond to these new arguments from Fitbit's reply to the oral hearing. This court has never found that to be sufficient. We didn't get to submit a new expert declaration to rebut their new expert declaration. We didn't get a SIR reply and the board ended up relying on those very arguments as part of this decision. Just remind me, you asked the board for those? Oh, yes. We asked in a teleconference to respond to these new arguments and the board denied that request. The council suggested the board didn't rely on Figure 7a as part of its analysis. The board clearly adopted Fitbit's entire argument as its own. You can't back away from that. If the board adopted Fitbit's new argument- Their argument is because the board didn't actually refer to Figure 7 that you can't infer that they actually relied on it. It doesn't expressly refer to that figure at all. You don't need to refer to the figure in order to have it inform your analysis and rely upon it. They specifically relied on pages 10 through 13 of Fitbit's reply and those were the pages where Fitbit discussed Figure 7a. They also made the finding that there was separation between the emitter and the end of the aperture. The only figure that discloses such a separation is Figure 7a. So it must have relied on that figure. In fact, it adopted Fitbit's analysis with respect to that figure and implicitly relied on it. What is the line between rebuttal argument and presenting a new argument? Well, so council referenced the Itamitsu case. Itamitsu involves a situation where the petitioner presented a reference, the patent owner said, oh no, those teach away from each other. And then in response, in a proper rebuttal, the petitioner came back and said, oh no, the references don't teach away. That's a clear back and forth. But where you're introducing and relying on new figures from a reference, as Fitbit did here with respect to Figure 7a, that's improper. It's the exact same circumstances as the Nuvasiv case, where the petitioner switched horses and relied on a new figure from the prior art references to support its prima facie case of obviousness. That's exactly what happened here. Can you just point me to the pages in the board's opinion that says that they adopt the petitioner's analysis? And I think you also said that the board cited certain pages of the reply, maybe 10 to 13. Yes. Appendix 17. Yeah. The board says at the top of that page, we agree with and adopt petitioner's analysis and Dr. Anthony's testimony. So that doesn't cite the reply. Well, it didn't say specifically that it wasn't adopting the reply. It just says, in general, that it adopted it. Just before that sentence, it cites petition 25 to 42. That's just the petition. And exhibit 103, I assume, is Anthony's opening declaration or only declaration? Opening. It wasn't his only. He submitted a reply. So that's just not reply material, right? That the board says it is adopting the reply. Well, I disagree that the board is only adopting what it referenced in the prior sentence. I believe that statement broadly adopts all of Fitbit's arguments. But the board did rely on the new arguments from the reply on page 19. It specifically referenced them. Petitioner argues that in Goodman, light source 24 does not extend entirely through aperture 49, and there's a space between the emitting surface of the light source and the end of the aperture. Light interacts with the aperture itself. Petition reply at 12, citing the new expert declaration. And the board accepted that finding as part of its analysis on appendix page 20. And earlier on, appendix 19, it also cites petition reply 11 through 13, as I noted earlier. So it's not, the board didn't use- Doesn't the Goodman reference also talk about how it's apertures allow light to pass? Well, sure. And that was Fitbit's original construction of light guiding interface was that the interface allows light to pass. That's not the same as the Allen-Sells construction of light guiding interface, which is to deliver light along a path. So regardless of whether- Can't be completely filled in if they're allowing light to pass. I guess that's the point. If the apertures are spaces on each side of the emitter where the emitter sits, then the aperture can allow light to pass because all the light goes- It doesn't even pass through the aperture itself. It's just where the emitter sits. So let me address a few other points here. I think your time has more than expired. So I thank both parties for their arguments, and the case will be submitted.